**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| SCOTT REEDER and | ) | |
| the ILLINOIS POLICY INSTITUTE | ) | |
| (d/b/a ILLINOIS NEWS NETWORK), | ) | No. 3:14-cv-03041 |
| | ) | |
| Plaintiffs, | ) | Judge Colin S. Bruce |
| v. | ) | |
| | ) | |
| MICHAEL J. MADIGAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**I.      Introduction**

Plaintiffs' complaint alleges that Defendants' decisions to deny Plaintiff Scott Reeder

media credentials for the Illinois House of Representatives and Illinois Senate violated his rights

under the First and Fourteenth Amendments. Rather than timely respond to Plaintiffs' motion for

preliminary or permanent injunction (Doc. 2), which Plaintiffs filed at the same time as their

complaint, Defendants have filed a motion to dismiss (Docs. 11-12), arguing that their decisions

denying Mr. Reeder's applications are protected by absolute legislative immunity.

Defendants' argument fails, and this Court should deny their motion.

The Supreme Court and the Seventh Circuit Court of Appeals have recognized absolute

legislative immunity for only a narrow range of activities. In each instance, the activity for which

these courts have granted immunity entailed conduct that was an inherent, integral part of the

legislative process – conduct where jfudicial intervention would prevent legislators from doing

their jobs as legislators. These activities have included such basic legislative acts as casting a

vote, making a speech from the floor of the legislature, and conducting a legislative investigation.

The Supreme Court and the Seventh Circuit have not applied legislative immunity in cases where a member of the legislative branch has made an administrative decision affecting a particular individual, such as the firing of a staff member, or where an official has otherwise administered or enforced a rule or policy.

Defendants' denials of Mr. Reeder's applications for media credentials fall into the latter category of activities that are not immune from judicial review. Decisions about media credentialing are not legislative in nature, nor are they integral to the legislative process. Defendants are therefore not entitled to absolute legislative immunity.

## II.   Background

As set forth more fully in Plaintiffs' complaint and memorandum in support of their motion for preliminary or permanent injunction, Plaintiff Scott Reeder has been a journalist for nearly 26 years, working for a series of newspapers and news services. (Compl. ¶¶ 32-37.) Currently, he works as journalist for the Illinois News Network, a project of Plaintiff Illinois Policy Institute ("IPI"), a non-profit organization, and each month his columns and news articles appear in some 60 to 80 newspapers across the state. (*Id.* ¶¶ 25-31.)

For many years, Mr. Reeder had access to the Illinois House and Senate press facilities. (*Id.* ¶ 38.) Defendants denied his applications in 2013 and 2014, however, because they consider IPI to be a lobbying organization. (*Id.* ¶¶ 39-49.)

In denying Mr. Reeder's applications, Defendants cited the Illinois Lobbyist Registration Act – which generally does not require journalists employed by entities that engage in lobbying to register as lobbyists, but does require them to register if they are employed by a non-profit

organization that lobbies and is "engaged primarily in endeavors other than the dissemination of news" – and House and Senate rules that bar people required to register as lobbyists from the chambers' respective floors. (*Id.* ¶¶ 41-49.) *See* 25 ILCS 170/3(a); Ill. House Rule 30(a); Ill. Senate Rule 4-3(d). Defendants Cullerton and Phelon also cited Senate Media Guidelines that require that the news organization employing a journalist "be owned and operated independently of any industry, institution, association, or lobbying organization" and that the journalist "operate independently of any industry, or institution" and not engage in lobbying. (Compl. ¶¶ 24, 41, 46.)

Mr. Reeder challenges Defendants' denials of his applications as violations of his right to freedom of the press under the First and Fourteenth Amendments and his rights to due process and equal protection under the Fourteenth Amendment. (*Id.* ¶¶ 55-76.) For his remedies, he seeks declaratory and injunctive relief. (*Id.* at 14-16.)

On February 4, 2014, Plaintiffs filed their complaint (Doc. 1) and moved for preliminary relief (Doc. 2) because Mr. Reeder's exclusion from the House and Senate press facilities is causing him irreparable injury as the current legislative session continues to go by. Defendants requested, and Plaintiffs agreed to, a one-week extension of their deadline to file a response to Plantiffs' motion for preliminary or permanent injunction. (Doc. 7.) When the extended deadline came, however, Defendants did not file a response to Plaintiffs' motion but instead moved to dismiss Plaintiffs' complaint and stay the proceedings. (Docs. 11-13.)

## III.  Law and Argument

Defendants bear the burden to show that their denials of Plaintiff Scott Reeder's applications for media credentials were legislative in nature and thus protected by legislative immunity. *Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988). They have failed to meet it.

Defendants' denials of Mr. Reeder's applications were administrative, not legislative, and decisions regarding media credentials are not an integral part of the legislative process.

### A.    Legislative immunity only protects legislative acts.

Under federal common law, state and local legislators are protected by legislative immunity for their legislative activities. *See Bogan v. Scott-Harris*, 523 U.S. 44, 48-54 (1998). This immunity is generally equivalent to the protection that members of Congress receive under the Speech or Debate Clause of the United States Constitution, although the constitutional "separation of powers 'justifies a broader privilege for Congressmen than for state legislators.'" *Bagley v. Blagojevich*, 646 F.3d 378, 397 (7th Cir. 2011) (quoting *Supreme Court of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 731-32 (1980)).

The purpose of the Speech or Debate Clause, and therefore of the analogous legislative immunity for state and local legislators, is to facilitate legislators' speech, debate, and other activities that are "integral" to the legislative process. *See Gravel v. United States*, 408 U.S. 606, 625 (1972); *see generally* Robert J. Reinstein & Harvey A. Silverglate, *Legislative Privilege and the Separation of Powers*, 86 Harv. L. Rev. 1113, 1120-44 (1973). The "predominate thrust" behind this immunity, stemming from its origins in Parliament, is to prevent prosecution of "critical or disfavored legislators by the executive in a judicial forum." *United States v. Johnson*, 383 U.S. 169, 182 (1966). Nonetheless, legislative immunity also protects legislators against private lawsuits that would "threaten to chill zealous representation by encouraging legislators to avoid controversial issues or stances in order to protect themselves not only from the consequences of litigation's results but also from the burden of defending themselves." *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997).

To be protected by legislative immunity, a legislator's action must be legislative in nature; "[a]dministrative or executive acts of legislators are not protected." *Rateree*, 852 F.2d at 950. "The Supreme Court has construed the legislative capacity narrowly, holding that legislative immunity 'does not prohibit inquiry into activities that are casually or incidentally related to legislative affairs but not *a part of the legislative process itself.*'" *Hansen v. Bennett*, 948 F.2d 397, 402 (7th Cir. 1991) (quoting *United States v. Brewster*, 408 U.S. 501, 528 (1972)); *see also Gravel*, 408 U.S. at 528 ("That [legislators] perform certain acts in their official capacity as [legislators] does not necessarily make all such acts legislative in nature."). Indeed, the Supreme Court's decisions on legislative immunity "reflect a decidedly jaundiced view towards extending the [Speech or Debate] Clause so as to privilege illegal or unconstitutional conduct beyond that essential to foreclose executive [branch] control of legislative speech or debate and associated matters such as voting and committee reports and proceedings." *Gravel*, 408 U.S. at 620. "In no case has [the] Court ever treated the Clause as protecting all conduct related to the legislative process. In every case thus before [the] Court, the Speech or Debate Clause has been limited to an act which was clearly a part of the legislative process – the due functioning of the process." *Brewster*, 408 U.S. at 515-16 (footnotes omitted).

To determine whether an action is legislative, a court considers whether it is "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel*, 408 U.S. at 625. The Supreme Court applies a "functional" approach to determining whether an act is legislative, administrative, or executive in nature, which "focuses on the nature of the duties with which a particular government official 'has been

5

lawfully entrusted, [and evaluates] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.'" *Rateree*, 852 F.2d at 950 (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).

In the Seventh Circuit's most recent detailed discussion of legislative immunity, the court applied a two-part test that followed the Supreme Court's example in *Bogan v. Scott-Harris*.[1] *See Bagley*, 646 F.3d at 392-93.

First, the Court considered "whether the acts were 'in form, quintessentially legislative'" by looking "at whether the defendants acted pursuant to constitutional or statutory procedures" and whether "the actions 'were integral steps in the legislative process.'" *Bagley*, 646 F.3d at 392 (quoting *Bogan*, 523 U.S. at 55).

Second, the court "look[ed] at the action's character to determine whether [it] substantively 'bore all the hallmarks of traditional legislation.'" *Bagley*, 646 F.3d at 393 (quoting *Bogan*, 523 U.S. at 55). "[A]t its core the [substantive] legislative function determines formulating and making policy." *Chicago Miracle Temple v. Fox*, 901 F. Supp. 1333, 1342 (N.D. Ill. 1995). "Legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)) (internal marks omitted). Accordingly, to determine whether an act was substantively legislative, a court must "look to whether the defendant official was enacting or promulgating a policy or rule as opposed to simply enforcing, monitoring, or applying the policy." *Id.*

---

[1] The only more recent Seventh Circuit case addressing legislative immunity simply applied the well-established principle that voting for a city ordinance is a protected legislative activity. *See See Benedix v. Village of Hanover Park*, 677 F.3d 317, 318 (7th Cir. 2012).

Following these principles, the activities that the Supreme Court and the Seventh Circuit have held to be protected by legislative immunity have been obviously legislative in both form and substance. These activities have included:

- Promulgating rules, *see Supreme Court of Va.*, 446 U.S. at 734;

- Introducing legislation, *see Bogan*, 523 U.S. at 55 (introduction of city budget); *Biblia Abierta*, 129 F.3d at 904 (introduction of zoning ordinance);

- Voting for legislation, *see, e.g., Bogan*, 523 U.S. at 55 (voting for city ordinance); *Benedix v. Village of Hanover Park*, 677 F.3d 317, 318 (7th Cir. 2012) (voting for ordinance restructuring city workforce); *Biblia Abierta*, 129 F.3d at 904 (voting for zoning ordinance); *Rateree*, 852 F.2d at 948-50 (voting for budget ordinance); *Reed v. Village of Shorewood*, 704 F.2d 943, 952-53 (7th Cir. 1983) (voting to reduce number of liquor licenses available);

- Signing legislation, *see Bogan*, 523 U.S. at 55 (signing city ordinance eliminating city department);

- Vetoing legislation, *see Bagley*, 646 F.3d at 392-95 (7th Cir. 2011) (governor's line-item veto);

- Making a speech from the floor of the legislature, *see United States v. Johnson*, 383 U.S. 169, 184-85 (1966);

- Distributing information to other members of the legislature at committee hearings, *see Doe v. McMillan*, 412 U.S. 306, 312 (1973);

- Summoning an individual to appear at an investigative hearing by the legislature, *see Tenney v. Brandhove*, 341 U.S. 367, 377-78 (1951); and

- Subpoenaing documents for a legislative investigation, *see Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504-06 (1975).

On the other hand, the Supreme Court, the Seventh Circuit, and Illinois federal courts have denied legislative immunity where legislative-branch officials have engaged in acts that are not legislative in form or substance.

For example, a typical decision to terminate a legislative-branch employee is not protected by legislative immunity because the act is not legislative in form – i.e., it is not done

according to legislative procedures prescribed by the constitution or statute – and is not

legislative in substance because it is a decision about a particular individual, not a decision

establishing a rule or policy to be followed generally in the future. *See Bogan*, 523 U.S. at 55-56

(contrasting hiring or firing of a particular employee with elimination of a position); *Rateree*,

852 F.2d at 950 ("employment decisions generally are administrative"); *Hagan v. Quinn*, 838 F.

Supp. 2d 805, 811 (N.D. Ill. 2012) (termination of particular arbitrators "was not legislative in

either form or substance"). (A decision to terminate a particular employee might be legislative in

form but not in substance – and therefore still not immune – where it is done by vote of a

legislative body. *See, e.g., Baird v. Bd. of Ed. For Warren Community Unit  Sch. Dist. No. 105*,

389 F.3d 685, 696 (7th Cir. 2004) (school board's vote to terminate superintendent was "an

administrative act").)

An action is also not legislative in substance when it enforces or administers an existing

rule or policy with respect to a particular individual or case. For example, although the Supreme

Court held that the Virginia Supreme Court and its chief justice were immune from suit for

*promulgating* rules governing attorney conduct, they were not immune from suit for their

*enforcement* of the rules against particular attorneys. *Supreme Court of Va.*, 446 U.S. at 734-37.

Similarly, when Congress voted to exclude a particular Representative from the House, the

members who voted for exclusion were protected by legislative immunity for their votes, but the

House staff members who carried out the exclusion by barring the Representative in question

were not immune from a claim seeking "judicial review of the propriety of the decision to

exclude" the Representative. *Powell v. McCormack*, 395 U.S. 486, 504-06 (1969).

As *Powell* shows, even the legislature's internal rules are not necessarily immune from

challenge. The Supreme Court has long held that Congress "may not by its rules ignore

8

constitutional restraints or violate fundamental rights." *United States v. Ballin*, 144 U.S. 1, 6 (1892). Thus, for example, courts have denied legislative immunity where plaintiffs have challenged legislative bodies' rules calling for sessions to be opened with prayer. *See Chambers v. Marsh*, 675 F.2d 228, 232-33 (8th Cir. 1992), *rev'd on other grounds*, 463 U.S. 783 (1983) (rule requiring chaplain to open each day of legislative session with prayer not protected by legislative immunity); *Doe v. Pittsylvania County*, 842 F. Supp. 2d 906, 918-20 (W.D. Va. 2012) (county board's policy of opening meetings with prayer by member not protected by legislative immunity). Courts have also held that a legislative body's decisions to exclude particular people or classes of people from their premises or meetings are not protected by legislative immunity because they are not integral to the legislative process. *See, e.g., Schultz v. Stranczek*, No. 91-3395, 1991 WL 328518 (7th Cir. Dec. 5, 1991) (arrest of individuals present at village board meeting not legislative because individuals' silent presence "did not interfere with the legislative process in any way"); *Kamplain v. Curry County Bd. of Comm'rs*, 159 F.3d 1248, 1252 (10th Cir. 1998) (county board's ban of individual from meetings and ban on participating or speaking at meetings not legislative); *Santana v. Cook County Bd. of Rev.*, 700 F. Supp. 2d 1023, 1029 (N.D. Ill. 2010) (ban of individual from County Board of Review's premises not legislative).

      **B.**    **Defendants have not met their burden to show that denying an application for media credentials is a legislative act.**

Defendants have failed to satisfy their burden to show that their denials of Mr. Reeder's applications for media credentials were legislative in nature and thus protected by legislative immunity. In fact, their denials were not legislative in either form or substance.

Defendants' denials of Mr. Reeder's applications were not legislative in form. Defendants have not shown that they were following any legislative procedures prescribed by the Illinois Constitution or by statute when they denied Mr. Reeder's applications. Indeed, neither

the Illinois Constitution nor any statute addresses the issuance of media credentials or prescribes any procedures for decisions related to the granting of media credentials.

Unlike the acts listed above that the Supreme Court and Seventh Circuit have found to be legislative, deciding whether to grant press credentials is not an integral step in the legislative process. Indeed, it is not a step in the legislative process at all. Whether a particular journalist is granted media credentials has no bearing on any legislator's ability to speak about, debate, introduce, or vote on legislation or to carry out any other legislative activities. Administration of the press facilities – like the facilities' very existence – is wholly incidental to the business of legislating. The decision to grant or deny an application for media credentials occurs entirely apart from the legislative process and may occur when the General Assembly is not even in session.

In cases where the Supreme Court and Seventh Circuit have applied legislative immunity, a lack of immunity would obviously have impeded the legislature's legislative business. For example, to enjoin legislators from voting for legislation, or a governor from signing or vetoing it – or to threaten officials with a judgment for damages for doing those things – would actually interfere with the legislative process. Enjoining a legislative investigation would likewise inherently impede the legislature's legislative business; in *Eastland*, for example, a "legislative inquiry [was] frustrated for nearly five years" because of litigation over whether Congress could compel an organization to produce certain documents. 421 U.S. at 511.

Here, in contrast, Plaintiffs' claims pose no threat to legislators' ability to do their jobs as legislators. Judicial review of a decision on whether to grant media credentials will not impede legislative business any more than judicial review of decisions to fire particular legislative-branch staff members impedes legislative business.

Defendants provide no evidence to support their vague, implicit suggestion that their decisions on whether to grant media credentials "color[] the very conditions under which legislators engage in formal debate" and that a journalist's "mere presence [in the legislature's chambers] affects the legislative environment." (Mem. in Support of Mot. to Dismiss at 11, quoting *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 632 (1st Cir. 1995).) In any event, the test for legislative immunity is not whether something in any way "colors the conditions" of legislative debate or "affects the legislative environment." To the contrary, *Powell*, in which the Court reviewed Congress's exclusion of a member, demonstrates that the courts can and do intervene in matters that affect the "legislative environment." *Powell*, 395 U.S. at 504-06; *see also Brewster*, 408 U.S. at 517 ("We would not think it sound or wise, simply out of an abundance of caution . . . , to extend the privilege . . . to include things in any way related to the legislative process.").

Moreover, legislative immunity for decisions on whether to grant press credentials would not serve the concerns underlying legislative immunity. A lack of legislative immunity for such decisions does not expose legislators to undue prosecution by the executive branch, nor does it threaten to "chill zealous representation by encouraging legislators to avoid controversial issues." *Biblia Abierta*, 129 F.3d at 903.

Substantively, a denial of an application for media credentials is administrative, not legislative. Like an employment decision, it is a decision regarding a particular individual. In making the decision to deny credentials, Defendants purport to apply an existing rule, not to create a new one.

Accordingly, because a decision on whether to grant media credentials a particular journalist is not a legislative activity, Defendants cannot meet their burden to show that they are

11

entitled to absolute legislative immunity for their denials of Mr. Reeder's applications for press credentials.

C.  **The District of Columbia Circuit's decision in *Consumers Union* does not justify applying legislative immunity in this case.**

In arguing that Plaintiffs' claims are barred by legislative immunity, Defendants rely primarily on *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975). That decision does not justify extending legislative immunity to Defendants in this case.

*Consumers Union* considered Congress's system for admitting journalists to its press galleries, which was administered by an association of journalists, with final authority on applications to the two houses respectively lying with the Speaker of the House and the Senate Committee on Rules and Administration. 515 F.2d at 1344-45.

*Consumers Union* should not control the outcome of this case for several reasons.

For one, *Consumers Union* involved Congress, rather than a state legislature, and therefore relied not only on legislative immunity under the Speech or Debate Clause, but also on the separation of powers between the federal legislative and judicial branches. *See id.* at 1346-51. As the Supreme Court and Seventh Circuit have noted, the "separation of powers 'justifies a broader privilege for Congressmen than for state legislators.'" *Bagley*, 646 F.3d at 397 (quoting *Supreme Court of Va.*, 446 U.S. at 731-32).

Indeed, *Consumers Union* emphasizes and appears to rely heavily on the fact that the rules challenged there were "internal" rules of Congress. 515 F.2d at 1347-51. Under a legislative-immunity analysis, that is not controlling. As discussed above, Supreme Court precedent makes clear that an "internal rule" is not immune simply because it is an internal rule. *See Ballin*, 144 at 5; *Powell*, 395 U.S. at 506.

Moreover, *Consumers Union* did not engage in the careful "functional" analysis that Supreme Court and Seventh Circuit precedent calls for. It did not explain how the consideration and approval or denial of applications for media credentials is "an integral part of the deliberative and communicative processes" of Congress. *Gravel*, 408 U.S. at 625. It did not examine whether such determinations are legislative in either form or substance, nor did it explain how judicial review of rules pertaining to admission to press galleries would impede legislators in carrying out legislative business. Instead, the court just asserted, without elaboration, that the periodical correspondents who made decisions on whether to grant media credentials "were engaging in a sense in acts generally done in relation to the business before Congress" and that their actions "fell within 'the sphere of legislative activity.'" 515 F.2d at 1350. These conclusory statements do not suffice to satisfy Defendants' burden to establish their immunity.

Finally, *Consumers Union* has been criticized for its disturbing implications. If Defendants are immune for denying media credentials to journalists such as Mr. Reeder based on their employment by a certain type of non-profit organization, Defendants would also be immune for denying credentials to journalists based on their race, sex, political views, or other arbitrary and improper factors. *See* Ryan Benjamin Witte, *It's My News, Too! Online Journalism and Discriminatory Access to the Congressional Periodical Press Gallery*, 12 Yale J. L. & Tech. 208, 228 (2009-2010) (noting that *Consumers Union* "leaves the strong possibility of impermissible discrimination" and urging its reconsideration); Deborah A. Coleman, *Equal Access and the First Amendment: The Debate Behind "Speech or Debate,"* 4 Hastings Const. L.Q. 35, 35-36 (1977)[2] (criticizing *Consumers Union* for barring judicial review of

---

[2] Available at http://www.hastingsconlawquarterly.org/archives/V4/I1/Coleman.pdf.

discrimination based on race and other arbitrary factors). Giving Defendants carte blanche to violate private citizens' fundamental constitutional rights in this way would be an extraordinary step – far beyond anything the Supreme Court or Seventh Circuit has ever approved – and Defendants have failed to justify taking it.

## Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' motion to dismiss and proceed to rule on Plaintiffs' motion for preliminary injunction.

Dated: March 12, 2014

Respectfully submitted,

/s/ Jacob H. Huebert_____
Jacob H. Huebert (6305339)
Attorney for Plaintiffs Scott Reeder and the
Illinois Policy Institute

Liberty Justice Center
190 S. LaSalle Street, Suite 1630
Chicago, Illinois 60603
(312) 263-7668
jhuebert@libertyjusticecenter.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2014 I electronically filed the foregoing Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint using the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ Jacob H. Huebert
Jacob H. Huebert