**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

_____

| | | |
|---|---|---|
| **SCOTT REEDER and the ILLINOIS** | ) | |
| **POLICY INSTITUTE (d/b/a ILLINOIS** | ) | |
| **NEWS NETWORK), an Illinois not-for-** | ) | |
| **profit corporation,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No. 14-CV-3041** |
| | ) | |
| **MICHAEL J. MADIGAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>OPINION</u>**

INTRODUCTION

Motive is one of the reasons an individual or a group engage in an action. An action caused by a good motive may be perceived as proper and appropriate. The same action caused by a bad motive may be perceived as improper, inappropriate or even criminal.

The court has questions about the motives behind the Defendants' denials of Plaintiff's application for access to the press facilities of the Illinois House and Senate. This is not to say that the court believes the Defendants' motives are improper.[1] The court simply wonders about the legislative review process for press applications, whether denials of press applications are routine or rare, whether similarly situated individuals were granted or denied access to the press facilities of the Illinois House and Senate, and whether waivers of the application requirements are granted.

_____

[1] Indeed, the prevention of lobbyists from circumventing restrictions on access to the House and Senate press areas through the creation of sham publications would be a possible, appropriate motive.

The threshold issue before the court when considering the pending motions, however, is whether Defendants' actions are within the scope of absolute legislative immunity. The Supreme Court in *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951), established that motive is not an element to be considered when determining absolute legislative immunity. Thus, the motives behind the Defendants' denial of Plaintiff's application for access to the press facilities of the Illinois House and Senate shall not be considered.

This case, therefore, is ripe for ruling by the court on various motions filed by the parties. This court has carefully reviewed the Verified Complaint (#1) filed by Plaintiffs, along with the attached exhibits, and all of the arguments made by the parties in their filings before this court. Following this careful review, the Motion to Dismiss (#11) filed by Defendants Michael J. Madigan, John Cullerton, Steve Brown and Rikeesha Phelon, is GRANTED. Accordingly, this case is dismissed with prejudice and Plaintiffs' Motion for Preliminary Injunction (#2) is MOOT.

FACTS[2]

This case involves Plaintiff Scott Reeder's unsuccessful application for access to the press facilities of the Illinois House and Senate. Reeder is an employee of Plaintiff Illinois Policy Institute (IPI). IPI is a 501(c)(3) not-for profit corporation with offices in

---

[2] This court's recitation of the facts is taken from Plaintiffs' Verified Complaint and the documents attached to the Complaint. This court notes that it may properly consider the exhibits attached to the Complaint in ruling on a motion to dismiss. *See Williamson v. Curran*, 714 F.3d 432, 435-36 (7th Cir. 2013).

Springfield and Chicago, Illinois. IPI is a non-partisan public-policy research and education organization that promotes personal and economic freedom in Illinois. Reeder has worked as a journalist for nearly 26 years and is currently a journalist for the Illinois News Network. The Illinois News Network is a project of IPI and is a news service that provides news articles and commentary related to issues of state government and public policy to newspapers across the state. Reeder writes his news commentary from a perspective that favors free markets and limited government, a perspective that he, and the Illinois News Network and IPI, believe is under represented in the Illinois media. IPI's work apart from the Illinois News Network primarily involves conducting and publishing research related to public policy issues affecting Illinois.

The Illinois House of Representatives (House) and Illinois Senate (Senate) both have press boxes on their respective chambers' floors. Access to the press boxes gives journalists advantages they would not otherwise have, such as the distribution of press releases, transcripts of speeches and staff analyses of bills, and a guaranteed seat in the legislative chambers on days when the public galleries are full. Not all journalists are given access to the press boxes because some are excluded by the application of the Illinois Lobbyist Registration Act (LRA), the House and Senate Rules, and the Senate Media Guidelines for the 98th General Assembly. The LRA requires individuals and organizations that directly or indirectly lobby the state government to register with the Illinois Secretary of State. There are exemptions from this requirement.

Reeder has worked as a journalist since 1988 for various organizations and was

granted access to the House and Senate press facilities for each year from 1999 through 2012.  Reeder started working for the Illinois News Network in 2012.  In late 2012 or January 2013, Reeder requested media credentials and access to the press facilities on the floor of the Illinois House and Senate for 2013.  At that time, IPI was registered as a lobbyist under the LRA.  On March 15, 2013, Rikeesha Phelon, Press Secretary to the President of the Senate, John Cullerton, denied Reeder's request on the ground that Senate Rule 4-3 and the Senate Media Guidelines barred registered lobbyists from obtaining press credentials.  Senate Rules 4-3(a) and (d) provide, in relevant part;

> Entitled to Floor
>
> (a) . . . Representatives of the press, while the Senate is in session, may have access to the galleries and places allotted to them by the President. . . .
>
> . . .
>
> (d) No person who is directly or indirectly interested in defeating or promoting any pending legislative measure, if required to be registered as a lobbyist, is allowed access to the floor of the Senate at any time during the session.

Verified Complaint (#1), Exhibit 2.  The Senate Media Guidelines provide in relevant part:

> 2.  In order to obtain access to the press galleries of the Senate, . . . a person must have a media credential issued by

the Office of the Senate President.

    3.  Persons eligible to apply for a media credential must be a bona fide resident correspondent of reputable standing, giving their chief attention to the gathering and reporting of news. Applicants must be employed by newspapers, periodicals, radio or other news services (hereinafter "news organization") that regularly publishes a substantial volume of news material . . . .  The news organization must engage in and require coverage of Illinois on a continuing basis and must be owned and operated independently of any industry, institution, association, or lobbying organization.  All applicants must also be employed by a news organization that is published for profit and is supported chiefly by advertising or by subscription, or is published by a nonprofit organization. Each applicant must operate independently of any industry, or institution, and not engage, directly or indirectly, in any lobbying or other activity intended to influence any matter before the General Assembly . . . .

Verified Complaint (#1), Exhibit 4.

    Reeder's application for media credentials for access to the House floor was also denied because he was employed by IPI, a registered lobbyist.  House Rule 30 states in

relevant part:

> Access to the House Floor
>
> (d) No person who is directly or indirectly interested in defeating or promoting any pending legislative measure, if required to be registered as a lobbyist, shall be allowed access to the floor of the House at any time during the session.

Verified Complaint (#1), Exhibit 1.

Reeder renewed his requests for Senate and House credentials in January 2014. Reeder, through counsel, explained that IPI had not registered and would not register as a lobbying organization in 2013, so that purported basis for denying Reeder's 2013 applications no longer applied. On January 16, 2014, Eric Madiar, counsel for Senate President John Cullerton, sent Reeder a letter denying his Senate application based on Madiar's belief that IPI was still required to register as a lobbying organization. Madiar stated:

> [The LRA] requires "any natural person who, for compensation or otherwise, undertakes to lobby, or *any person or entity who employs or compensates another person for the purposes of lobbying*" to register with the Illinois Secretary of State. 25 ILCS 170/3 (emphasis added). And while the Act exempts a person or entity employed by a newspaper or other regularly published periodical or other

bona fide news medium in the ordinary course of business of

disseminating news, editorial or comment from having to

register as a lobbyist, that exemption does not apply to "an

individual insofar as he or she receives additional

compensation or expenses from some source other than the

bona fide news medium for the purpose of influencing

executive, legislative, or administrative action."  25 ILCS

170/3(a)(2).  That exemption is also inapplicable to

"newspapers and periodicals owned by or published by trade

associations and not-for-profit corporations engaged primarily

in endeavors other than dissemination of news."  Id.

Verified Complaint (#1), Exhibit 7.  Madiar noted that IPI did not register as a lobbyist in

2014 but, instead, created an affiliated organization, Illinois Policy Action (IPA), which

registered as a lobbyist under the LRA and serves as the IPI's lobbyist.  Madiar stated that

IPI's website states that IPA "advocates for the free market ideas developed by [IPI]."

Madiar noted that IPI and IPA have identical boards of directors, occupy the same offices,

share the same telephones and share the same employees.  Madiar concluded his letter by

stating:

In light of the above information, you are ineligible at

this time to obtain a Senate media credential because you are

employed by the Illinois News Network which is part of, and

an assumed name for, the Illinois Policy Institute.  As such,

the Institute's Illinois News Network is not, per the

Guidelines, "owned and operated independently of any

industry, institution, association, or lobbying organization."

. . .  Further, the Illinois News Network does not appear to

operate independently of any lobbying organization whether

that organization is deemed the Institute or Policy Action.

And since you are an employee of the Institute, it is difficult

to fathom how you operate independently of the Institution

per the Senate Media Guidelines.

Verified Complaint (#1), Exhibit 7.

Similarly, Heather Wier Vaught, Counsel to House Speaker Michael J. Madigan,

on behalf of the Speaker and his Press Secretary, Steve Brown, also denied Reeder's

request, concluding that Reeder was a representative of a lobbyist barred access to the

floor under House Rule 30(d).  Wier Vaught stated:

[I]t is my opinion that Mr. Reeder, in his capacity as an

employee of [IPI], is not a "representative of the press."  The

[IPI] is neither a press nor a media organization.  This

determination is made, in part, based on information provided

on the [IPI]'s website[.]

Verified Complaint (#1), Exhibit 8.

On February 4, 2014, Plaintiffs, Scott Reeder and the Illinois Policy Institute d/b/a Illinois News Network, filed a Verified Complaint (#1) against Defendants Michael J. Madigan, John Cullerton, Steve Brown and Rikeesha Phelon, with attached documentation. In their Complaint (#1), Plaintiffs sought recovery under 42 U.S.C. § 1983, alleging violations of their rights under the United States Constitution. In particular, they alleged violations of the First Amendment right to freedom of the press (Counts I and II), their Fourteenth Amendment right to due process (Counts III and IV) and their right to equal protection (Count V). Plaintiffs sought, as relief: (1) a declaration that Defendants violated Reeder's constitutional rights; (2) a declaration that the House and Senate Rules on their face violate the First and Fourteenth Amendments; and (3) an injunction prohibiting Defendants from excluding Reeder from the press sections of the Illinois House or Senate.

Plaintiffs also filed a Motion for Preliminary Injunction or Permanent Injunction (#2), with an attached Memorandum in Support. Plaintiffs argued that Defendants' arbitrary discrimination against Reeder based on his employer's status as a non-profit organization that also engages in other activities violates his First Amendment right to freedom of the press. Relying, in part, on the district court's decision in *Consumers Union of United States, Inc. v. Periodocal Correspondents' Ass'n*, 365 F. Supp. 18

(D.D.C. 1973),[3] Plaintiffs contended that federal courts have struck down discriminatory restrictions that excluded certain journalists from press facilities. Plaintiffs noted that the court in *Consumers Union* struck down a rule that excluded from the Congressional press galleries any journalists employed by organizations that were not "owned and operated independently of any . . . institution" because it violated the First Amendment principle that "all types of publications are entitled to an equal freedom to hear and publish the official business of the Congress." *Consumers Union*, 365 F. Supp. at 26. Plaintiffs argued that Defendants' exclusion of Reeder was substantially identical to the exclusion of reporters from a consumer-advocacy group that the court condemned in *Consumers Union*. Plaintiffs argued that Reeder's exclusion from the House and Senate press facilities is causing him irreparable injury and asked this court to enter a preliminary or permanent injunction ordering Defendants to allow Reeder access to the press facilities of the Illinois House and Senate.

On February 28, 2014, Defendants filed a Motion to Dismiss Complaint (#11) and a Memorandum in Support (#12). Defendants argued that Plaintiffs' Complaint must be dismissed because the Illinois legislature's enactment and application of internal rules of procedure governing access to the Senate and House facilities are protected from judicial scrutiny by absolute legislative immunity. Defendants pointed out that the D.C. Circuit Court of Appeals reversed the district court's decision in *Consumers Union*. *Consumers*

---

[3] Plaintiffs' citation stated that the case had been reversed on other grounds by the Court of Appeals for the D.C. Circuit.

*Union of United States, Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341 (D.C. Cir. 1975). The D.C. Circuit held that the case was "not justiciable" because the acts complained of "were within the spheres of legislative power committed to the Congress and the legislative immunity granted by the Constitution." *Id.* at 1351. The court remanded the matter to the district court with direction for its dismissal as one not justiciable "in view of immunity conferred by the Speech or Debate Clause of the Constitution." *Id.*

Based primarily on *Consumers Union* and *National Ass'n of Social Workers v. Harwood*, 69 F.3d 622 (1st Cir. 1995), in which the First Circuit Court of Appeals similarly applied absolute legislative immunity to a law suit challenging restrictions on access to the legislative floor imposed by the state legislature of Rhode Island, Defendants argued that the "matter about which Plaintiffs complain—Illinois Senate and House rules restricting access to the floor of the state legislature—is a quintessentially legislative function that is fully protected from judicial scrutiny by the doctrine of legislative immunity." Defendants asked this court to dismiss Plaintiffs' Complaint either pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that the matter is nonjusticiable, or alternatively under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the ground of absolute legislative immunity.

On March 12, 2014, Plaintiffs filed their Response in Opposition to Defendants' Motion to Dismiss (#14). Plaintiffs argued that the United States Supreme Court and the Seventh Circuit Court of Appeals have not extended absolute legislative immunity to the

situation involved here.  Plaintiffs also argued that the decision in *Consumers Union* does not justify extending absolute legislative immunity to Defendants in this case.

On March 21, 2014, this court entered a text order and granted Defendants' Motion to Stay the proceedings pending this court's ruling on the Motion to Dismiss.  On March 31, 2014, this court granted Defendants' Motion for Leave to File Reply.

## ANALYSIS

The United States Supreme Court has determined that the Speech and Debate Clause of the United States Constitution immunizes Congressmen from suits for either prospective relief or damages.  *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731 (1980); *see also Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 502-03 (1975).  "The purpose of this immunity is to insure that the legislative function may be performed independently without fear of outside interference."  *Id.* at 731.  The Supreme Court has concluded that, to preserve legislative independence, "legislators engaged 'in the sphere of legitimate legislative activity' should be protected not only from the consequences of litigations' results but also from the burden of defending themselves."  *Id.* at 731-32 (internal citations omitted).  The Court has "also recognized that state legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen under the Speech or Debate Clause."  *Id.* at 732.  The Supreme Court has stated that, although separation of powers doctrine "justifies a broader privilege for Congressmen than for state legislators in criminal actions," the Court generally equates

"the legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *Id.* at 733; *see also Bagley v. Blagojevich,* 646 F.3d 378, 397 (7th Cir. 2011). Therefore, it is well established that legislators are absolutely immune from liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 48-49 (1998), *citing Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). This rule applies to federal, state, regional and local legislators. *Bogan*, 523 U.S. at 49, 54; *see also Tenney*, 341 U.S. at 377. Moreover, *Tenney* firmly established that motive is not an element to be considered when determining absolute legislative immunity. *Bogan*, 523 U.S. at 54-55, *citing Tenney*, 341 U.S. at 377; *see also Bagley,* 646 F.3d at 391; *Biblia Abierta v. Banks*, 129 F.3d 899, 903 (7th Cir. 1997).

"Absolute immunity, however, only applies to those legislators acting in their legislative capacity." *Biblia Abierta*, 129 F.3d at 903; *quoting Rateree v. Rockett*, 852 F.2d 946, 950 (7th Cir. 1988). Whether an activity is legislative and therefore subject to absolute legislative immunity turns on the nature of the act itself, and even non-legislators are entitled to absolute legislative immunity when they perform legislative acts.[4] *Bogan*, 523 U.S. at 54-55. The government official seeking immunity "has the burden of showing that an exemption from personal liability is justified 'by overriding considerations of public policy'" or "by a tradition of common law practice existing at the

---

[4] For this reason, if Cullerton and Madigan's actions are entitled to absolute legislative immunity, their press secretaries, Brown and Phelon, are also entitled to absolute legislative immunity for performing the same legislative acts.

time of the enactment of section 1983." *Rateree*, 852 F.2d at 950, *quoting Forrester v. White*, 484 U.S. 219, 224 (1988) and *citing Pulliam v. Allen*, 466 U.S. 522, 529 (1984). Absolute immunity is not available for activities "casually or incidentally related to legislative affairs but not *a part of the legislative process itself*." *Hansen v. Bennett*, 948 F.2d 397, 401 (7th Cir. 1991) (emphasis in original), *quoting United States v. Brewster*, 408 U.S. 501, 528 (1972). But when acting "in the sphere of legitimate legislative activity," legislators are "immune from deterrents to the uninhibited discharge of their legislative duty." *Biblia Abierta*, 129 F.3d at 903, *quoting Tenney*, 341 U.S. at 376-77. The Seventh Circuit has recognized that this line drawing is often difficult, but "preserves the balance between inhibiting public officials from exercising their essential duties and protecting victims of wrongs committed by public officials." *Rateree*, 852 F.2d at 951. The doctrine of absolute legislative immunity "reflects the need to ensure and protect a vigorous, often contentious, democracy within this nation's legislative bodies." *Id.*

The Supreme Court has explained that covered legislative acts consist of matters that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House." *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see also Rangel v. Boehner*, ___ F. Supp. 2d ___, 2013 WL 6487502, at *16-17 (D.D.C 2013). This includes activities essential to facilitating the core legislative processes. *See Biblia Abierta*, 129 F.3d at 903, *citing*

14

*Gravel*, 408 U.S. at 616.

Plaintiffs contend that Defendants have failed to satisfy their burden to show that their denials of Reeder's applications for media credential were legislative in nature and thus protected by absolute legislative immunity. Plaintiffs are correct that there are no Supreme Court or Seventh Circuit cases which have found that absolute legislative immunity applies to this type of situation.

This court agrees with Defendants, however, that the decisions in *Consumers Union* and *Harwood* are instructive. In *Consumers Union*, a representative of Consumer Reports magazine was denied access to Congress's Periodical Press Galleries based upon rules of the Senate and House which stated, in pertinent part:

> [O]ccupation of the galleries is confined to bona fide and accredited resident correspondents, *newsgatherers*, or reporters of reputable standing who represent one or more periodicals which regularly publish a substantial volume of news material of either general or of an economic, industrial, technical, or trade character, published for profit and supported chiefly by advertising, and owned, and operated independently of any industry, business, association, or institution . . . .

*Consumers Union*, 515 F.2d at 1344-45 (emphasis in original). The district court held that the refusal to accredit Consumer Reports magazine and its designated representative

to Congress's Periodical Press Galleries was a denial of equal protection and due process, and that a portion of the congressional rules violated the freedom of the press guarantee of the First Amendment to the Constitution.  *Id.*, at 1342.

As noted previously, the D.C. Circuit reversed.  The court recognized that the plaintiff, Consumers Union of United States, Inc., is a "reputable non-profit membership organization established in 1936 to foster the interests of consumers and to provide them with information and counsel on consumer goods and services."  *Id.*  The court also recognized that the organization derived a substantial portion of its income from the sale of its publications, primarily its monthly magazine, Consumer Reports, which accepts no advertising but "includes reports of independent product evaluations conducted at its laboratory facilities, together with news items and news analyses of general interest to consumers."  *Id.*  The court further noted that, at trial, the government did not contend that the organization was a "lobbying group."  *Id.*  The court concluded, however, that the case was "not justiciable" because the acts complained of "were within the spheres of legislative power committed to the Congress and the legislative immunity granted by the Constitution."  *Id.* at 1351.  The court remanded the matter to the district court with direction for its dismissal as one not justiciable "in view of immunity conferred by the Speech or Debate Clause of the Constitution."  *Id.*

In reaching this conclusion, the court carefully considered and discussed Supreme Court precedent.  *Id.* at 1347-51.  The court concluded that the defendants "were enforcing internal rules of Congress validly enacted under authority specifically granted

to the Congress and within the scope of authority appropriately delegated by it." *Id.* at

1350. The court stated that the defendants were engaging in acts generally done in

relation to the business before Congress, which was "an integral part of the deliberative

and communicative processes." *Id., citing Gravel*, 408 U.S. at 625.  The court therefore

concluded that the acts fell within "the sphere of legislative activity." *Id., citing Eastland*,

421 U.S. at 502-03. The court stated:

> It is quite apparent from the text of the rule in question
> in light of legislative history that its purpose is to assure that
> the Periodical Press Galleries, within space limitations, will
> be used by *bona fide* reporters who will not abuse the
> privilege of accreditation by importuning Members on behalf
> of private interests or causes to which lobbying or advocacy
> groups are committed.  The manner of assuring independence
> of those accredited from such groups or interests is for the
> Congress to determine as a matter of constitutional power.

*Id.* at 1347.

   In *Harwood*, the plaintiffs sued the speaker of the Rhode Island House of

Representatives and the House's head doorkeeper, challenging the constitutionality of a

House rule purporting to ban lobbyists from the floor of the House while the House was

in session, but allowing governmental lobbyists onto the floor.  *Harwood*, 69 F.3d at 625-

26. Following a four-day bench trial, the district court entered judgment for the plaintiffs

and ordered the House to refrain from "continuing its current practices with regard to this issue." *Id.* at 626.

The First Circuit Court of Appeals reversed. Even though the issue of absolute legislative immunity had not been raised before the district court, the First Circuit ruled that the defendants "acted within the legislative sphere and are protected from judicial interference by the doctrine of absolute legislative immunity." *Id.* at 635. In reaching this conclusion, the First Circuit stated:

> In a general sense, the defendants—the Speaker and the head doorkeeper—did nothing more or less than to interpret and enforce Rule 45. Where, as here, a legislative body adopts a rule, not invidiously discriminatory on its face, . . . that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do no more than carry out the will of the body by enforcing the rule as a part of their official duties.

*Id.* at 631, *citing Consumers Union*, 515 F.2d at 1348-50. The court further stated that "[w]e think it is beyond serious dispute that enforcing a duly enacted legislative rule which prohibits lobbying on the House floor during House sessions is well within the legislative sphere." *Id.* at 632. The court then concluded that "regulation of admission to the House floor comprises 'an integral part of the deliberative and communicative

18

processes by which Members participate in . . . House proceedings with respect to the consideration and passage or rejection of proposed legislation" so that "the doctrine of legislative immunity pertains." *Id.*, *citing Gravel*, 408 U.S. at 625.

This court finds the reasoning and conclusions of the courts in *Consumers Union* and *Harwood* persuasive. This court concludes that, because this case also involves rules regulating access to the House and Senate floors, there is no basis for distinguishing the situation here from the situation before the courts in those cases. This court concludes that the rules challenged here are very similar to the rules challenged in *Consumers Union* and *Harwood*. This court also notes that two district courts dismissed cases based upon absolute legislative immunity where the plaintiffs claimed they were wrongfully denied access to Congress's Periodical Press Galleries. *See Schreibman v. Holmes*, 1997 WL 527341, at *3-4 (D.D.C. 1997) (dismissing case after finding it was indistinguishable from *Consumers Union*); *Pettingell v. Executive Committee of Correspondents*, 1986 WL 8569, at *2 (D.D.C. 1986) (finding that Congress "has the power to determine those members of the press who are eligible and otherwise to deny those members of the press eligibility to the floors and/or Press Galleries of Congress"). Plaintiffs have not cited any cases which have declined to apply absolute legislative immunity to this type of situation.

Plaintiffs have argued that the decision in *Consumers Union* does not justify applying absolute legislative immunity in this case. Plaintiffs first argued that *Consumers Union* involved Congress, rather than a state legislature. This court does not find this argument persuasive because the Supreme Court has stated that it generally equates "the

legislative immunity to which state legislators are entitled under § 1983 to that accorded Congressmen under the Constitution." *See Bagley,* 646 F.3d at 397, *quoting Supreme Court of Virginia*, 446 U.S. at 731-32. Moreover, the *Harwood* decision did involve a state legislature and reached the same conclusion. Plaintiffs have also challenged the reasoning of *Consumers Union* and have pointed out that the case has been criticized in two law review articles.[5] This court has already found the reasoning of *Consumers Union* instructive and persuasive. In the absence of contrary authority, this court will follow the reasoning of *Consumers Union* and *Harwood*.

CONCLUSION

Because this court has determined that absolute legislative immunity bars this action, Defendants' Motion to Dismiss (#11) must be granted. This court notes that it remains very interested in the motivation behind Defendants' actions regarding Reeder's access to the press facilities of the Illinois House and Senate. Should the Seventh Circuit Court of Appeals disagree with this court's determination that absolute legislative immunity applies to this situation and remand the case, this court would welcome the opportunity to explore the motives behind Defendants' decisions and the opportunity to seek answers to the questions discussed in the introduction to this Opinion.

IT IS THEREFORE ORDERED THAT:

---

[5] This court notes that Plaintiffs have criticized *Consumers Union* for not engaging in the careful "functional" analysis they argue is required by Supreme Court and Seventh Circuit precedent. However, this court concludes that the court in *Consumers Union* very adequately discussed Supreme Court precedent and reached a well-reasoned and well-supported conclusion.

(1) Defendants' Motion to Dismiss (#11) is GRANTED.  Accordingly, this case is dismissed with prejudice.

(2) Plaintiff's Motion for Preliminary Injunction (#2) is MOOT.

(3) This case is terminated.

ENTERED this <u>24th</u> day of <u>April </u>, 2014.

s/COLIN S. BRUCE
U.S. DISTRICT JUDGE